**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **CHRISTOPHER PATRICK MOYNIHAN**, <br><br> Defendant. | Case No. 21-cr-226 (CRC) |

**<u>OPINION AND ORDER</u>**

The government alleges that Defendant Christopher Moynihan reached the dais of the Senate chamber on January 6, 2021, while a Joint Session of Congress convened for the certification of the 2020 presidential election results.  Moynihan faces a six-count indictment and has moved to dismiss the first count:  obstruction of an "official proceeding" in violation of 18 U.S.C. § 1512(c)(2).  An "official proceeding" includes "a proceeding before the Congress."  18 U.S.C. § 1515(a)(1)(B).  In several other cases, this Court—along with fellow judges in the district—has considered and rejected arguments akin to those raised by Mr. Moynihan here.  The Court will therefore deny the motion.

## I.    Background

In the 2020 presidential election, Americans elected Joseph Biden as President.  Their votes, however, "actually go toward selecting members of the Electoral College, whom each State appoints based on the popular returns.  Those few 'electors' then choose the President," Chiafalo v. Washington, 140 S. Ct. 2316, 2319 (2020), although throughout American history, they have been "trusty transmitters of" the people's votes.  Id. at 2326.

These electoral votes are then "transmit[ted] sealed" to Congress to be counted and certified.  U.S. Const., amend. XII.  The Constitution says that the Vice President, acting as

President of the Senate, "shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes [of the Electoral College] shall then be counted"; "[t]he person having the greatest number of votes for President," assuming he or she has a majority, "shall be the President." Id.; see also U.S. Const. art. II, § 1, cl. 3.  A law called the Electoral Count Act of 1887 provides more structure for how disputes regarding electoral votes are handled by Congress.  That law also sets the date and time for Congress to conduct this task:  "the sixth day of January" at "1 o'clock in the afternoon."  3 U.S.C. § 15.

So, on January 6, 2021, at approximately 1:00 p.m., the United States House of Representatives and Senate convened for a Joint Session of Congress at the U.S. Capitol building to certify the Electoral College vote count for the 2020 presidential election.  See Statement Facts at 1, ECF No. 1-1.[1]  Then-Vice President Mike Pence presided.  Id.  By 1:30 p.m., the House and Senate retired to separate chambers to resolve an objection to the votes.  Id.  Around 2:00 p.m., a large crowd, which had gathered outside the Capitol, forced its way into the building.  Id.  The breach caused members of the House and Senate, and Vice President Pence, to evacuate.  Id.

Generally, the Capitol building is secured 24 hours a day, with restrictions including permanent and temporary security barriers.  Statement Facts at 1.  On January 6, 2021, the exterior plaza of the building was also closed to the public, and only certain authorized individuals were permitted inside.  Id.  As the mass of people gathered outside while the certification proceeded, the Capitol Police attempted to keep the crowd away from the building,

---

[1] This background is drawn from the statement of facts supporting the initial criminal complaint and arrest warrant in the case.  The Court recognizes that Moynihan may dispute some of the facts presented.

but to no avail.  Id.  The occupation of the Capitol and its grounds suspended the Joint Session

for about six hours, until after 8:00 p.m.  Id.

According to the government, Moynihan entered the U.S. Capitol building on January 6,

2021, making it onto the dais of the Senate chamber.  Statement Facts at 2.  Video footage

apparently depicts Mr. Moynihan, on the Senate floor, using his cell phone to take photographs

of official congressional notes and documents—records which the government believes reflected

some congressmembers' detailed objections and votes regarding the election certification.  Id.

While reviewing the documents, Moynihan allegedly stated on video, "There's got to be

something we can use against these fucking scumbags."  Id.

On January 8, 2021, a federal grand jury returned a six-count indictment against

Moynihan.  See Indictment, ECF No. 9.  Moynihan has moved to dismiss count one of the

indictment:  obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2).  See

generally Mot. Dismiss, ECF No. 37.  The government filed an opposition.  See generally Opp'n,

ECF No. 39.  A plea agreement hearing, and stipulated bench trial on count one only, is

scheduled for August 23, 2022.

## II.   Legal Standards/Standard of Review

A criminal defendant "may raise by pretrial motion any defense, objection, or request that

the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Pretrial

motions may challenge "a defect in the indictment," including "lack of specificity" and "failure

to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  Because pretrial dismissal of an

indictment "'directly encroaches upon the fundamental role of the grand jury,' dismissal is

granted only in unusual circumstances."  United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir.

2015) (citation omitted).  An indictment requires only "a plain, concise, and definite written

statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), in order "to inform the defendant of the nature of the accusation against him." Ballestas, 795 F.3d at 148–49 (quoting United States v. Hitt, 249 F.3d 1010, 1016 (D.C. Cir. 2001)). The Court "assumes the truth of those factual allegations." Id. at 149. "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012) (citing United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011)).

## III. Analysis

Moynihan advances three arguments in challenging count one of the indictment. Many courts in this district have already dispensed with these same arguments. See generally United States v. Robertson ("Robertson II"), No. 21-cr-34 (CRC), 2022 WL 2438546, at *2 n.1 (D.D.C. July 5, 2022) (collecting cases). For the reasons summarized below, this Court will follow suit.

### A. Count One Adequately Alleges Conduct Covered by § 1512(c)(2)

First, Moynihan urges the Court to follow the reasoning in United States v. Miller, –––– F. Supp. 3d ––––, 2022 WL 823070, at *3–15 (D.D.C. Mar. 7, 2022), which imposes a requirement that a defendant charged with violating § 1512(c) take action with respect to a document, record, or other object. Mot. at 2. This Court, however, has followed "the heavy weight of authority" rejecting Miller. See Robertson II, 2022 WL 2438546, at *3–4. "Naturally read, subsection (c)(1) is about the alteration of evidence and hindering its use in an official proceeding; subsection (c)(2) is about 'otherwise'—meaning in a different way than what's provided in (c)(1) —hindering the official proceeding itself." Id. at *3; United States v. Montgomery, –––– F. Supp. 3d ––––, 2021 WL 6134591, at *12 (D.D.C. Dec. 28, 2021) (explaining that the word "otherwise"

simply "signals a shift in emphasis, from actions directed at evidence to actions directed at the official proceeding itself").  Miller starts with the rule of lenity and focuses heavily (too heavily) on the word "otherwise."  See, e.g., Montgomery, 2021 WL 6134591, at *11–12.  By contrast, the majority interpretation in this district starts with the text and ordinary meaning, and, as a result, "both recognize[s] a link between" subsections (c)(1) and (c)(2) and gives "meaning to the word 'otherwise.'"  See United States v. Reffitt, —— F. Supp. 3d ——, 2022 WL 1404247, at *8 (D.D.C. May 4, 2022); Robertson II, 2022 WL 2438546, at *3–4.  In short, an indictment on this charge need not allege that a defendant took an action with respect to a document, record, or other object.

B.  The Certification of the Electoral College Vote is an "Official Proceeding"

Next, Moynihan argues that the certification of the Electoral College vote does not constitute an "official proceeding" under 18 U.S.C. § 1512(c)(2).  Yet, "'[t]he plain, obvious and common sense' meaning of" official proceeding "reaches the Certification of the Electoral College vote."  Robertson II, 2022 WL 2438546, at *2 (quoting United States v. Caldwell, —— F. Supp. 3d ——, 2021 WL 6062718, at *8 (D.D.C. Dec. 20, 2021)).  Congress's Joint Session to certify the electoral votes "has many trappings familiar from other types of proceedings."  See Mostofsky, —— F. Supp. 3d ——, 2021 WL 6049891, at *10 (D.D.C. Dec. 21, 2021)  To start, the proceeding is mandated by the Constitution, and it is the final step for counting the votes and certifying the presidential election results.  U.S. Const. art. II, § 1, cl. 3; U.S. Const. amend. XII.  The Electoral Count Act, 3 U.S.C. §§ 15–18, provides a detailed process for this Joint Session.  As each certificate of electoral votes is announced, a presiding officer calls for objections, which must be in writing and signed by both a Senator and a Member of the House; "the Senate and the House withdraw to consider each objection," and there are rules for debate and ruling on

objections; and the session cannot "be dissolved until the count of electoral votes shall be completed and the result declared."  See United States v. Sandlin, 575 F. Supp. 3d 16, 23 (D.D.C. 2021) (citing 3 U.S.C. §§ 15–18).  The proceeding is also documented in the Congressional Record, which reports the "proceedings and debates" of Congress—objections, deliberations, and decisions on objections in all.  See 167 Cong. Rec. H75, S13 (daily ed. Jan. 6, 2021) (House and Senate Sections) (emphasis added).  In short, the certification is plainly "a proceeding before the Congress."

Moynihan resists this conclusion, relying on United States v. Guertin to argue that because an "'official proceeding' must 'resemble a formal tribunal,'" the electoral count does not constitute an "official proceeding."  Mot. at 11-12 (citing Guertin, No. 21-cr-262 (TNM), 2022 WL 203467, at *7 (D.D.C. Jan. 24, 2022)).  In Guertin, however, the conduct involved "a proceeding before a Federal Government agency."  2022 WL 203467, at *6.  This case presents a different context, involving a "proceeding before the Congress."  § 1515(a)(1)(B).  Moynihan also argues that the election certification is merely ceremonial and administrative, not adjudicatory, nor does it involve witness testimony or documentary evidence.  See Mot. at 12-13.  "But these extra requirements for an 'official proceeding' are absent from § 1515(a)(1)(B)."  Sandlin, 575 F. Supp. 3d at 24; see also Caldwell, 2021 WL 6062718, at *5.  The certification of the Electoral College vote is quasi-adjudicatory and involves objections to documents—the electoral ballots from the fifty states.  As explained above, it has the familiar features of a formal hearing.  The certification of the Electoral College vote thus qualifies as an "official proceeding," specifically "a proceeding before the Congress."

C.  <u>Vagueness Challenge</u>

Moynihan next maintains that 18 U.S.C. § 1512(c)'s use of the word "corruptly" is unconstitutionally vague, both facially and as applied here.  This argument fails as well.  A vagueness challenge will fail if the statute at issue simply "'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask."  <u>United States v. Bronstein</u>, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting <u>Coates v. City of Cincinnati</u>, 402 U.S. 611, 614 (1971)).  Vagueness problems arise when, applying the tools of statutory interpretation, the statute's "meaning specifies no standard of conduct at all."  <u>See</u> <u>Bronstein</u>, 849 F.3d at 1107–08 (cleaned up).

Although courts must avoid "applying a novel construction of a criminal statute," judicial interpretation can supply "the requisite level" of "clarity" to satisfy due process.  <u>See</u> <u>United States v. Lanier</u>, 520 U.S. 259, 266 (1997).  The Court concurs with the other courts in this district that have defined "corruptly" to mean acting "with consciousness of wrongdoing."  <u>See</u> <u>Caldwell</u>, 2021 WL 6062718, at *8– 11; <u>Sandlin</u>, 575 F. Supp. 3d at *32–34 ("unlawfully, and with the intent to obstruct").

Moynihan's reliance on <u>United States v. Poindexter</u> falls short.  951 F.2d 369 (D.C. Cir. 1991) (holding "corruptly," undefined in 18 U.S.C. § 1505, unconstitutionally vague as applied to defendant's conduct of lying to Congress).  Other courts in this district have thoroughly explained how <u>Poindexter</u> has since been "cabined" to "its facts, and no court of appeals, including the D.C. Circuit, has read [the case] to mean . . . that the term 'corruptly' in any obstruction statute is fatally vague."  <u>Caldwell</u>, 2021 WL 6062718, at *9; <u>Sandlin</u>, 575 F. Supp. 3d at 30-32.

Moynihan's as-applied argument also fails.  The government alleges that Moynihan reached the dais of the Senate chamber, took photos of official congressional notes and documents related to the election certification, and while reviewing the documents, stated, "[t]here's got to be something we can use against these fucking scumbags."  Statement Facts at 2, ECF No. 1-1.  Moynihan's alleged conduct "is sufficient to state an offense" based on the statutory language.  See Mostofsky, 2021 WL 6049891, at *11.

**IV.   Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that [37] Christopher Moynihan's Motion to Dismiss is DENIED.

**SO ORDERED**.

<br>

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  August 22, 2022