UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 21-CR-226 (CRC) |
| : | |
| CHRISTOPHER PATRICK, : | |
| MOYNIHAN : | |
| : | |
| **Defendant** : | |

**STATEMENT OF FACTS FOR STIPULATED TRIAL**

The parties, by their undersigned counsel, hereby submit this Statement of Facts for the Stipulated Trial.

**I.     ELEMENTS**

**COUNT ONE**

The essential elements of the offense of obstruction of an official proceeding and aiding and abetting, in violation of Title 18, United States Code, Section 1512(c)(2), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant attempted to or did obstruct or impede an official proceeding;

2. The defendant intended to obstruct or impede the official proceeding;

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendant acted corruptly.

The government further alleges that the defendant aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. The defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. The defendant performed an act or acts in furtherance of the offense;

4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5. The defendant did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

The term "official proceeding" includes a proceeding before the Congress.

## COUNT TWO

The essential elements of the offense of entering or remaining in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(1), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

2. The defendant did so knowingly.

## COUNT THREE

The essential elements of the offense of disorderly or disruptive conduct in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(2), each of which the

government must prove beyond a reasonable doubt, are:

1. The defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2. The defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; and

3. The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

### **COUNT FOUR**

The essential elements of the offense of entering and remaining on the floor of Congress, in violation of Title 40, United States Cod, Section 5104(e)(2)(A), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant entered or remained on the floor of either House of Congress without authorization; and

2. The defendant acted willfully and knowingly.

### **COUNT FIVE**

The essential elements of the offense of disorderly or disruptive conduct in a Capitol building or grounds, in violation of Title 40, United States Code, Section 5104(e)(2)(D), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2. The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct

of a session of Congress or either House of Congress; and

    3. The defendant acted willfully and knowingly.

### COUNT SIX

The essential elements of the offense of parading, demonstrating, or picketing in a Capitol building, in violation of Title 40, United States Code, Section 5104(e)(2)(G), each of which the government must prove beyond a reasonable doubt, are:

    1. The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings;

    2. The defendant acted willfully and knowingly.

### II.    STATEMENT OF OFFENSE

If the case proceeded to trial, the defendant agrees the government would have elicited the following evidence:

*The Attack at the U.S. Capitol on January 6, 2021*

    1.    The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

    2.    On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

    3.    On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected

members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.  As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.  At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.  At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Christopher Patrick Moynihan's Participation in the January 6, 2021, Capitol Riot*

8.      On January 6, 2021, Moynihan was among the rioters who broke through the security perimeter on the east side of the Capitol Building. Moynihan joined rioters confronting police at the base of the steps on the east side.



6

9. After rioters broke through the police line at the base of the east steps, Moynihan climbed the steps and joined the rioters gathered outside the Rotunda Door. While there, Moynihan observed rioters attacking Capitol Police officers attempting to defend the Rotunda Door.



10. At approximately 2:40 p.m., a group of rioters succeeded in breaking through the police line and for a period of time, rioters entered the Capitol Building through the Rotunda Doors. Moynihan was among the rioters who managed to squeeze through the crowd and enter the building.



11. After entering the building, Moynihan climbed stairs to the third floor as rioters shouted "Treason!" Moynihan then walked along a hallway on the third floor, shouting as he approached the Senate side of the Capitol Building.



12. At approximately 2:45 p.m. Defendant briefly entered the Senate Gallery through a third floor door. Defendant left the Gallery and walked down to the second floor.

13. At approximately 2:49 p.m., Moynihan entered the Senate Chamber through a door on the second floor. Moynihan was aware that he did not have authorization to enter the Senate Chamber. At one point, Moynihan paged through a notebook on top of a Senator's desk, taking out papers, and taking pictures with his cellphone. While looking through the papers, Moynihan said, "There's gotta be something in here we can fucking use against these scumbags." Defendant is depicted below in a screen shot taken from a *New Yorker* magazine video taken on January 6, 2021, inside the Senate chamber.



14.     At approximately 3:04 p.m., Moynihan walked down to the Senate well, where he stood adjacent to an elevated desk and platform.  A few feet away, several other individuals were shouting, praying, and commanding the attention of others in the Senate chamber. One of those individuals was shirtless, wearing face paint, and using a bullhorn to speak. Moynihan walked toward those individuals and remained standing with them while they continued to shout, cheer, and say prayers using the bullhorn.  Moynihan is depicted below in a screen shot taken from a *New Yorker* magazine video taken on January 6, 2021, inside the Senate chamber.



15. At approximately 3:08 p.m. law enforcement officers cleared the Senate Chamber and Moynihan was escorted out of the U.S. Capitol Building.

16. Moynihan willfully and knowingly entered the U.S. Capitol Building and the Senate Chamber knowing that he did not have permission or authorization to do so. Moynihan further admits that while inside the Capitol, he willfully and knowingly uttered loud, threatening, or abusive language, or engaged in disorderly or disruptive conduct with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress. Moynihan further admits that while inside the Capitol, he willfully and knowingly paraded, demonstrated, or picketed.

17. Moynihan further admits that while inside the Capitol, he corruptly obstructed, influenced, and impeded an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

Without waiving any arguments set forth in Mr. Moynihan's Motion to Dismiss Count 1, the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, this evidence would establish each and every element of the charged offenses in light of the Court's ruling on the Motion and without waiving defendant's objection to the Court's ruling.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Robert Juman*
Robert Juman
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office,
Detailee
555 Fourth Street, N.W.

Washington, DC 20530
Phone: (786) 514-9990
E-mail: Robert.juman@usdoj.gov

DEFENDANT'S ACCEPTANCE

I have read the foregoing Statement of Facts for Stipulated Trial, and I have discussed this proffer fully with my attorney, Ned Smock, Esquire. I fully understand this proffer, and I accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 8/18/2022

Christopher Patrick Moynihan
Defendant

ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Statement of Facts with my client, Christopher Patrick Moynihan, and fully discussed it with my client.

Date: 8/18/2022

Ned Smock, Esq.
Attorney for Defendant Christopher Patrick Moynihan