UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **CHRISTOPHER PATRICK MOYIHAN**, <br><br> Defendant. | Case No. 21-cr-226 (CRC) |

**MEMORANDUM OPINION**

Before the Court is Defendant Christopher Patrick Moynihan's Motion for Release Pending Appeal.  See Mot. for Release [ECF No. 68].  Having considered the motion, the Government's opposition, and Moynihan's reply, the Court will grant his motion.  Because his appeal presents a substantial question likely to result in a reduced sentence of 12 months, the Court orders his detention terminated at the expiration of those 12 months.

**I.    Background**

In March 2021, Moynihan was charged by indictment with one felony and five misdemeanors, all stemming from his conduct at the U.S. Capitol on January 6, 2021: obstruction of an official proceeding and aiding and abetting under 18 U.S.C. § 1512(c)(2) and 2 (Count One); entering and remaining in a restricted building or ground under 18 U.S.C. § 1752(a)(1) (Count Two); disorderly and disruptive conduct in a restricted building or grounds under 18 U.S.C. § 1752(a)(2) (Count Three); entering and remaining on the Floor of Congress under 40 U.S.C. § 5104(e)(2)(A) (Count Four); disorderly conduct in a Capitol building under 40 U.S.C. § 5104(e)(2)(D) (Count Five); and parading, demonstrating, and picketing in a Capitol building under 40 U.S.C. § 5104(e)(2)(G) (Count Six).  Indictment [ECF No. 9] at 1–3.

In August 2022, Moynihan filed a motion to dismiss Count One contending that because § 1512(c)(2) must be understood in reference to § 1512(c)(1), his conduct did not fall within the

statute's scope. Mot. Dismiss [ECF No. 47] at 3. Section 1512(c) applies to anyone who "(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so[.]" 18 U.S.C. § 1512(c). Moynihan argued that the "'otherwise' clause in Section 1512(c)(2) must be construed in a similar vein to the terms that are in clause one." Mot. Dismiss at 9. "Thus," he contended, "in order for Count One to sufficiently allege a violation, it must allege that Mr. Moynihan took some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding." Id. (cleaned up).

In keeping with its prior rulings and the "heavy weight of authority" in this district, the Court denied Moynihan's motion to dismiss. Op. & Order [ECF No. 41] at 4. The Court held that "[n]aturally read, subsection (c)(1) is about the alteration of evidence and hindering its use in an official proceeding; subsection (c)(2) is about 'otherwise'—meaning in a different way than what's provided in (c)(1)—hindering the official proceeding itself." Id. (quoting United States v. Robertson, No. 21-cr-34 (CRC), 2022 WL 2438546, at *2 (D.D.C. July 5, 2022)). On this reading, the Court found that an indictment on § 1512(c)(2) "need not allege that a defendant took an action with respect to a document, record, or other object." Id. at 5.

On August 23, 2022, Moynihan was convicted of the felony charge at a stipulated trial and pled guilty to the five misdemeanor charges. Judgment [ECF No. 55] at 1–2. The Court allowed Moynihan to remain free until sentencing, which took place on February 3, 2023. See Aug. 23, 2022 Min. Order. At sentencing, the Court calculated Moynihan's guideline range at 33 to 41 months, based on an offense level of 14 and a criminal history category of V due to a 12-point criminal history. Sentencing Tr. [ECF No. 65] at 4–5. At the government's urging, the Court applied a three-point enhancement to the offense level under U.S.S.G. 2J1.2(b)(2) for

substantial interference with the administration of justice. Id. at 6. But the Court also applied a three-point reduction for acceptance of responsibility and a prompt plea. Id. at 5. The Court also agreed with Moynihan that because the calculated range overstated his criminal history, a departure from the range was warranted under U.S.S.G. § 4A1.3(b)(1). Id. at 42–43. The Court proceeded to sentence Moynihan to 21 months of incarceration on Court One; 12 months of incarceration on Counts Two and Three, to run concurrently; and 6 months of incarceration on Counts Four, Five, and Six, also to run concurrently. Judgment at 3. The Court permitted Moynihan to self-surrender to the Bureau of Prisons, Sentencing Tr. at 58, and he began serving his sentence on March 29, 2023, Mot. for Release at 3. He has thus served approximately eleven months of his total sentence. Moynihan has appealed his convictions to the D.C. Circuit.

## II.     Analysis

Moynihan now seeks release pending the resolution of his appeal under 18 U.S.C. § 3143(b). That provision requires the Court to detain a defendant pending appeal unless it finds both: "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released"; and "(B) that the appeal is not for the purpose of delay and raises a substantial question of fact or law likely to result in," as relevant here, "(iv) a reduced sentence to a term of imprisonment less than the total of the time already serviced plus the expected duration of the appeal process." 18 U.S.C. § 3143(b).

### A. Flight Risk or Danger

On the first prong of § 3143(b), the Court finds by clear and convincing evidence that Moynihan would not present a danger to the community or a flight risk were he to be released pending his appeal. Indeed, the government does not contest this point, and Moynihan

voluntarily appeared at trial, at sentencing, and at his designated prison facility.  See March 3, 2022 Min. Order; Aug. 23, 2022 Min. Order; Mot. for Release at 3.

      B.  Substantial Question

Moving to § 3143(b)'s second prong, the Court follows a two-step inquiry: "(1) Does the [defendant's] appeal raise a substantial question?  (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal [or one of the other outcomes enumerated in § 3143(b)(1)(B)(ii)–(iv)]?'"  United States v. Perholtz, 836 F.2d 554, 555 (D.C. Cir. 1987).  Under the first step of this inquiry, the D.C. Circuit has defined a "substantial question" as a "close question or one that very well could be decided the other way."  Perholtz, 836 F.2d at 555 (cleaned up).  The Court assumes the "defendant was validly convicted," and therefore it is the defendant's burden to "rebut[] this presumption and demonstrat[e] that he has a substantial question to present upon appeal."  Sheppard, 2024 WL 127016, at *2 (quoting United States v. Libby, 498 F. Supp. 2d 1, 3 (D.D.C. 2007)).

Moynihan argues that the Supreme Court's grant of certiorari in Fischer v. United States, a case concerning the scope of § 1512(c)(2), shows that his appeal raises a "substantial question."  Mot. for Release at 6; see also Fischer v. United States, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023).  To understand how the Supreme Court's decision in Fischer might impact Moynihan's appeal, some background on Fischer is helpful.  Ruling on a motion to dismiss, the district court in Fischer held that § 1512(c)(2) "must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding."  United States v. Miller, 589 F. Supp. 3d 60, 78 (D.D.C.), reconsideration denied, 605 F. Supp. 3d 63 (D.D.C. 2022), and rev'd and remanded sub nom. United States v. Fischer, 64 F.4th 329 (D.C. Cir. 2023), cert. granted, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13,

4

2023).[1] A panel of the D.C. Circuit reversed, adopting the "broad meaning" of the statute endorsed by a majority of district court judges and finding the statute "encompasses all forms of obstructive conduct." United States v. Fischer, 64 F.4th 329, 335 (D.C. Cir. 2023), cert. granted, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023). Circuit Judge Katsas dissented and offered yet a third interpretation of § 1512(c)(2). Id. at 370 (Katsas, J., dissenting). He found that § 1512(c)(2) "covers only acts that impair the integrity or availability of evidence." Id. at 64 F.4th at 376. The Supreme Court granted certiorari on the question of whether 18 U.S.C. § 1512(c)(2) applies to "acts unrelated to investigations and evidence." Pet. for Writ of Cert., Fischer v. United States, No. 23-5572 (filed Sept. 11, 2023).

As perhaps this history of Fischer suggests, it is anyone's guess which interpretation of § 1512(c)(2) the Supreme Court will adopt. It may choose one of the three theories advanced by the lower courts or adopt an entirely different interpretation of the statute.

For many January 6th defendants who took no action with respect to a document and no action related to "investigations [or] evidence," the question of substantiality has been relatively straightforward. Their convictions would likely be reversed on appeal should the Supreme Court adopt either the district court's or Judge Katsas's interpretation of § 1512(c)(2). As a result, judges in this district, including this Court, have found that while a reversal of the D.C. Circuit's majority opinion is far from guaranteed, the garnering of four votes in favor of certiorari indicates the presence of a "substantial question." See Mem. Op., United States v. Adams, No. 21-cr-354-APM [ECF No. 85], at 3 ("[T]he Supreme Court's decision to review Fischer means, at a minimum, that this case presents a 'close question.'"). See also, e.g., Mem. Op., United

---

[1] In Fischer, District Judge Nichols issued an order citing to the opinion he issued in United States v. Miller. See United States v. Fischer, No. 1:21-cr-234, 2022 WL 782413 (D.D.C. March 15, 2022).

5

States v. Strand, No. 21-cr-85-CRC [ECF No. 150], at 3; United States v. Sheppard, No. 21-cr-203 (JDB).

Moynihan's case is more complicated.  As the Court found at the stipulated trial, Moynihan entered the Senate Chamber and then "paged through a notebook on top of a Senator's desk, taking out papers, and taking pictures with his cellphone."  Statement of Facts for Stipulated Trial ("Stip. Facts") [ECF No. 43] ¶ 13.  "While looking through the papers, Moynihan said, 'There's gotta be something in here we can fucking use against these scumbags.'"  Id.  Because Moynihan's "conduct involved taking action against documents related to the Electoral Certification," the government contends that a reversal of the D.C. Circuit's opinion in Fischer would not impact his conviction.  Opp'n at 5.  In other words, the government suggests that Moynihan would still be guilty under the district court's interpretation of § 1512(c)(2) in Fischer.

The Court is not so sure.  Under the district court's reading, a defendant must take "some action with respect to a document, record, or other object *in order to* corruptly obstruct, impede or influence an official proceeding."  Miller, 589 F. Supp. at 78 (emphasis added).  It is not clear on the present record that Moynihan handled the document in order to obstruct the vote certification.  Moreover, as noted above, the Supreme Court might reverse the D.C. Circuit and adopt Judge Katsas's evidence-impairment theory, under which it is even less clear that Moynihan's conviction would stand.  See also Reply at 3 ("If [the Government] had believed that [Moynihan] impaired evidence by looking at documents in a Senator's desk, or photographing two pages from the desk, it would have charged him under § 1512(c)(1) . . . and it would have sought a sentencing enhancement under USSG § 2J1.2(b)(3)").

Ultimately, the Court cannot "read the tea leaves," and predict which interpretation of § 1512(c)(2) the Supreme Court will adopt.  Adams, 2024 WL 111802, at *2.  Though Moynihan

6

may still be guilty of a § 1512(c)(2) violation even if the Supreme Court reverses the D.C. Circuit, the Court's uncertainty about how the Supreme Court will rule indicates that his appeal presents "close question." Perholtz, 836 F.2d at 555 (cleaned up).

      C.  Reduced Sentence

But that does not get Moynihan over the finish line. The second element of § 3143(b)'s second prong remains: Moynihan must convince the Court that a favorable opinion in Fischer would likely lead to "a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process." 18 U.S.C §§ 3143(b)(1)(B)(i), (iv).[2] Moynihan has served approximately eleven months of his 21-month sentence. Mot. for Release at 3. The Supreme Court is expected to decide Fischer by the end of its term in June. Opp'n at 6. Thus, by the time Fischer is likely to be decided, Moynihan will have served about 14 months. The question, then, is whether a reversal of his § 1512(c)(2) conviction would likely result in a sentence less than that amount of time.

As of now, the answer is yes. In light of the sentencing guidelines and the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court presently would be inclined to sentence Moynihan to the statutory maximum sentence for his Class A misdemeanor offense: 12 months.

Starting with the sentencing guidelines, if Moynihan's § 1512(c)(2) felony conviction is overturned, he would be left with two Class A misdemeanor convictions under 18 U.S.C. §§

---

[2] Moynihan does not claim that a favorable ruling in Fischer would lead to reversal of his conviction, and, in any event, that argument would not succeed. To meet the standard for reversal, Moynihan's appeal must "raise a substantial question likely to result in reversal of *all counts* for which [the defendant] received prison terms." Perholtz, 836 F.2d at 555 (emphasis added). Moynihan pled guilty to and is currently serving a sentence for five misdemeanor counts not at issue in Fischer. Judgment at 3. See also United States v. Bledsoe, No. CR 21-204 (BAH), 2024 WL 341159, at *5 (D.D.C. Jan. 30, 2024) ("A favorable ruling for defendant in Fischer would not result in 'reversal' under Section 3143(b)(1)(B)(i), for while such ruling may require vacatur of defendant's Section 1512(c)(2) conviction, defendant remains convicted on four misdemeanor counts.").

1752(a)(1) and (a)(2) (Counts Two and Three), and three Class B misdemeanor convictions under 40 U.S.C. §§ 5104(e)(2)(A), (D) and (G) (Counts Four, Five, and Six).  The Class A misdemeanors are subject to the sentencing guidelines.  See U.S.S.G. § 1B1.9.  The Statutory Index to the guidelines specifies that violations of 18 U.S.C. § 1752 are subject to either U.S.S.G. § 2A2.4—the guideline for obstructing or impeding officers, which carries a base offense level of 10—or U.S.S.G. § 2B2.3—the guideline for trespass, which carries a base offense level of 4.  See U.S.S.G. Statutory Index (App. A); id. §§ 2A2.4, 2B2.3.  Where, as here, "more than one guideline section is referenced for the particular statute," the Index provides that courts should "use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted."  U.S.S.G. Statutory Index (App. A).

      The guideline for obstructing or impeding officers, not the guideline for trespass, is more appropriate for Moynihan's offense.  The facts Moynihan stipulated to at trial showed that he joined a crowd of rioters confronting police at the base of steps on the Capitol Building's east side.  Stip. Facts ¶ 8.  After rioters broke through the line of officers, Moynihan climbed the steps and joined rioters outside the Rotunda Door.  Id. ¶ 9.  There, he observed rioters attacking Capitol Police officers attempting to defend the entrance.  Id.  When rioters succeeded in breaking through this second police-line, Moynihan "squeeze[d] through the crowd" and entered the building.  Id. ¶ 10.  He proceeded to enter the Senate Gallery and then the Senate Chamber.  Id. ¶¶ 12–13.  After rifling through documents on a senator's desk, he walked to an elevated platform in the Senate well and stood with other rioters as they shouted through a bullhorn.  Id. ¶¶ 13–14.  He did not leave the Senate Chamber until law enforcement officers cleared it and escorted him out of the Capitol Building.  Id. ¶ 15.  There can be little doubt that this conduct "obstruct[ed] or imped[ed]" officers in their efforts to protect and clear the Capitol, U.S.S.G. § 2A2.4, and was more serious than mere trespass.  The base offense level would therefore be 10.

At sentencing, the Court imposed a three-level enhancement to the offense level under U.S.S.G. § 2J1.2(b)(2) because the offense "resulted in the substantial interference with the administration of justice"—namely, the Electoral Vote certification process. Sentencing Tr. at 6. That same enhancement would not apply in the absence of the § 1512(c)(2) conviction because it is not a specific offense characteristic under § 2A2.4's "obstructing or impeding officers" guideline. See U.S.S.G. § 2A2.4. The Court also applied a three-point reduction for acceptance of responsibility and a prompt plea, which would still apply and therefore bring the offense level to 7. Sentencing Tr. at 5.

Moynihan would remain in Criminal History V, so with an offense level of 7, his guideline range in the absence of the § 1512(c)(2) conviction would be 12 to 18 months. Because any sentence above the minimum of that range (12 months) would result in a sentence above the maximum authorized by 18 U.S.C. § 1752 (12 months), the statutory maximum supplies the guideline sentence. See U.S.S.G. § 5G1.1(a).

Moving on to the other § 3553(a) factors, the Court would likely sentence Moynihan to a sentence of 12 months on Counts Two and Three, to run concurrently. The Court explained its reasoning at the prior sentencing hearing, Sentencing Tr. at 41–47, and need not expound on it here. Little has changed. Moynihan was convicted of prior offenses; he committed serious offenses that went beyond mere trespass; he was one of the first individuals to breach the Capitol; he made his way to the Senate Chamber, rifled through the papers of a senator, and then bragged about it; and he did not show remorse for his crimes at sentencing.[3] In sum, taking

---

[3] At sentencing, the Court agreed with Moynihan that because his original guidelines range (33 to 41 months) overstated his criminal history, a departure from the range was warranted. Sentencing Tr. at 42–43. The Court sentenced him to 21 months, which it noted was "the low end of [Criminal History Category] 3 of the guidelines." Id. at 46. A similar departure would not be warranted here. As the facts listed above indicate, Moynihan is one of the more serious January 6th misdemeanants. A 12-month sentence would accurately reflect the seriousness of his offenses.

9

account of all the circumstances as the Court sees them today, a 12-month sentence would be "sufficient, but not greater than necessary" to satisfy the purposes of federal sentencing. 18 U.S.C. § 3553(a).

Because at the time of this order's issuance, Moynihan still has time left on a 12-month sentence, the Court orders his detention terminated at the end of those 12 months. See 18 U.S.C. § 3143(b)(1)(B) (If the appeal is "likely to result in" "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.").

### III.    Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Release Pending Appeal. A separate Order shall accompany this memorandum opinion.

Date: February 28, 2024

CHRISTOPHER R. COOPER
United States District Judge